# Bodenheimer v. Chesson.

*Action of Ejectment.*

1. *Ejectment; burden of proof as to notice.*—In an action of eject-
ment, where the plaintiff and defendant trace their title through a
common source, claiming under deeds that were never recorded, the
plaintiff claiming that his deed was executed prior to that under
which the defendant claims, and the defendant claiming to be a *bona
fide* purchaser, the burden is upon the plaintiff to prove that the de-
fendant, at the time of such purchase, had notice of the plaintiff's
prior deed; and upon his failure to make such proof, he can not re-
cover.

APPEAL from the Circuit Court of Bullock.

Tried before the HON. JESSE M. CARMICHAEL.

Appellees sued one Turner in ejectment for S. ½ of sec-
tion 7, township 15, range 22, lying in Bullock county,
and known as the Cape Oswalt Place. Bodenheimer,
the appellant, was let in to defend as landlord, and filed
three pleas : 1st. Not guilty. 2d. Statute of limitations
of ten years. 3d. Defendant "has held possession of the
premises sued for under color of title." Issue was
joined on these pleas, and on them the case was tried.
James F. Chesson, father of plaintiffs, was the common
source of title. Plaintiffs claimed under a voluntary
deed made to them by their father, August 20, 1871,
which was never recorded. In that deed it was recited
that the conveyance was made "subject to the following
reservations, viz., the right and privilege of ourselves to
occupy, cultivate and enjoy all the benefits arising from
cultivation or rents of said land our natural life." James
F. Chesson died February 15th, 1892, and this action
was begun June 29, 1892. Defendant claimed under a
chain of conveyances. By the testimony of A. J. and B.
N. Chesson, brothers of James F. Chesson, and other
witnesses, it was shown that prior to March 3, 1873,
James F. Chesson conveyed the land in suit and other
land to A. J. and B. N. Chesson, in consideration of the
latter assuming the payment of debts of said James F.
Chesson to the amount of three or four thousand dollars ;

that this conveyance was by a regular warranty deed, containing the regular words, "bargain, sell and convey," and was duly acknowledged before a justice of the peace, as required by the Code of Alabama. This deed was not recorded, and was lost. After its execution and delivery were proved, preliminary proof of its loss was made, and then the contents of said deed were proved as set out above. It was also shown that in pursuance of said arrangement to assume James F. Chesson's debts, A. J. and B. N. Chesson, on March 3, 1873; mortgaged the land in suit and other property conveyed by said deed, and that they applied the proceeds to the payment of James F. Chesson's debts; that this mortgage was forclosed, and the defendant claims under the purchaser at the foreclosure sale, holding a bond for title dated August 15, 1890. This bond for title, as well as the other writing evidencing title, was introduced in evidence, and it was shown by Bodenheimer that he had been in continuous, open and notorious adverse possession of said land since said date under said bond for title, and that his vendors were in possession from 1877 to the time of the sale to him. It was also shown by the defendants that for the year 1877 C. W Chesson paid rent for the land in suit, to the purchasers at the foreclosure sale, and he did so by direction of J. F. Chesson, and that from 1871 to 1876, James F. Chesson was in possession. A. J. Chesson testified that from the time James F. Chesson executed the deed to him and his brother, B. N. Chesson, until 1876 or 1877, said James F. Chesson paid them a nominal rent on said land. A. J. and B. N. Chesson and Bodenheimer, testified that none of them had any knowledge or notice of plaintiff's deed of August 20, 1871, until this suit was brought; and A. J. Chesson testified that James F. Chesson represented to him and his brother, B. N. Chesson, when he made them the deed in 1872 or 1873, that the land in suit was unincumbered. So far the evidence was without conflict. The only conflict in the testimony is that A. J. Chesson testified that when James F. Chesson made the deed to him and his brother he was badly embarassed financially, while plaintiff, C. W. Chesson testified that his father's financial condition was good at that time.

Among the charges requested by the plaintiffs, and to

the giving of each of which the defendant separately excepted, was the general affirmative charge in their behalf. It is unnecessary to set out in detail the facts pertaining to the rulings of the court upon the evidence and the several other charges given by the court at the request of the plaintiffs.

There were verdict and judgment for the plaintiffs. The defendants' appeal and assign as error the several rulings of the trial court to which exceptions were reserved.

TOMPKINS & TROY and F. LAW, for appellant.— 1. It is to be remembered that the plaintiff's deed was not recorded. A. J. and B. N. Chesson were purchasers for value without notice, from James F. Chesson, and their mortgage was, in turn, for a good and valuable consideration to Lehman, Durr & Co., who had no notice of said plaintiff's deed, and Bodenheimer in turn received his bond for title from them for valuable consideration without notice of plaintiff's claim to the land. It is a settled rule of law in this State that an unrecorded deed is void as to purchasers for value without notice from the grantee in possession.—*Chandler v. Tardy*, 58 Ala. 150 ; *Robertson v. Durden*, 89 Ala. 500. *King v. Paulk*, 85 Ala. 186 ; *Motley v. Jones*, 98 Ala. 443 ; *Watt v. Parsons*, 73 Ala. 202. On this principle of law it seems to us that defendants were entitled to the affirmative charge which was asked in writing at the trial. 2. A. J. and B. N. Chesson assumed the payment of between three and four thousand dollars of the debts of James F. Chesson. Assumption of the payment of debts is a valuable consideration—*Mason v. Buchanan*, 62 Ala. 110 ; *Pique v. Arendale*, 71 Ala. 91, 97 ; *Harmon v. McRae*, 91 Ala. 401 ; *Pollock v. Jones*, 96 Ala. 492. After the land passed into the hands of a *bona fide* purchaser for value it was immaterial what he did with it ; the unrecorded deed was void as to such purchaser, and whoever obtained title through him got it entirely relieved of any burden.—2 Brick. Dig., 520, § 194.

E. L. BLUE, C. L. JINKS and THOS. H. WATTS, *contra*, cited *Hawkins v. Ross*, 100 Ala. 464 ; 3 Brick. Dig. 433, § 388 ; *Goodman v. Pickett*, 64 Ala. 410 ; *Pope v. Pickett* 65 Ala. 487 ; *Pope v. Pickett*, 74 Ala. 122 ; *Lee v. DeBar-*

[Smith v. Chadwick.]

*deleben,* 102 Ala. 628 ; *Dillard v. Savage,* 98 Ala. 598 ; *White v. Blair,* 95 Ala. 147.

HEAD, J.—It is unnecessary to discuss this case in detail. There is no conflict whatever in the evidence, that James F. Chesson, the original owner, in possesion of the land sued for, and his wife, for valuable consideration, conveyed the land by deed of bargain and sale, in fee, to A. J. and B. N. Chesson, who purchased, parted with the consideration, and received the deed without notice of the prior unrecorded deed of gift made by their grantors to the plaintiffs of a remainder in the land, dependent upon a life estate reserved to the grantor, James F. Chesson. The execution, loss, and contents of the deed to A. J. and B. N. Chesson were established without conflict in the evidence, or room for an adverse inference, and the purchasers offered no evidence tending to show that either of them had any notice of the prior deed to plaintiffs. Moreover, they, the purchasers, both testified they had no such notice. In pleading, a party setting up a subsequent purchase must, as essential elements of his case, aver payment of a valuable consideration without notice of the right or equity alleged against him, but it is the universal rule, founded in manifest reason and justice, that he is not required to prove the negative— want of notice. The affirmative fact of notice must be proven by the opposite party. The same rule prevails in the law merchant, and in every judicial relation of which we are aware. The defendants connect themselves with the title so acquired, and the court ought to have given the general charge in their behalf, as requested.

Reversed and remanded.